UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Annetta Lasaune Thornton, | ) |
| Plaintiff, | ) No.: 3:19-cv-00060-JEL-DCP |
| v. | ) Hon. Judith E. Levy |
| Sheriff Justin Edwards, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING COUNTS AND DISMISSING THE CASE WITH PREJUDICE [22]**

In an opinion and order issued on August 5, 2020, this Court granted summary judgment in favor of Defendants Stooksbury, Walker, Wadsworth, and Roane County. (ECF No. 41.) These Defendants were dismissed with prejudice on all counts. (*Id.*)

The only claims remaining after the Court's August 5, 2020 order are Plaintiff's claims against Defendant officers Edwards and Bruglio under the United States Constitution, the Tennessee Constitution, and Tennessee statutory claims.

The Court ordered Defendants to produce badge-camera video of the encounter that underlies this case. (*Id.* at PageID.225–226.) Defendants did so. (ECF No. 42.)

The Court has now carefully reviewed the badge-camera video and grants summary judgment in favor of Defendants Edwards and Bruglio on all remaining counts for the reasons set forth below. The case is dismissed with prejudice.

I. **Background**

The background of this case was adequately set forth in the light most favorable to *pro se* Plaintiff Annetta Lashaune Thornton in the Court's August 5, 2020 opinion and order and is fully adopted here. (ECF No. 41.)

The Court has reviewed the badge-camera video produced by Defendants, which is consistent with the description of the incident in Defendants Edwards and Bruglio's declarations attached to their motion for summary judgment. (ECF No. 22-2, PageID.92–94; ECF No. 22-3, PageID.95–96.) On summary judgment, "where the police dash-cam video[s] ... depict[ ] all of the genuinely disputed facts," *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014)—we "view [ ] the facts in the

light depicted by the videotape[s]." *Scott v. Harris*, 550 U.S. 372, 381 (2007); *and see Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

The following additional facts have been obtained by viewing the video badge-camera footage:

The incident at issue occurred while Plaintiff was visibly intoxicated. There is over one hour of footage from Bruglio and Edwards' badge-cameras demonstrating that the officers repeatedly attempted to obtain information from Plaintiff and her companion. Both were in the victim's home while he was locked out, and the officers were investigating whether a robbery or assault had taken place.

At about the 35 minute mark in the video, Bruglio calmly and slowly checked the tightness of Plaintiff's handcuffs. Plaintiff berated the Defendants and called them liars. Once Plaintiff's handcuffs were adjusted, she asked Defendants where her phone was located, and continued shouting at them that they were "lying."

Next, although handcuffed, Plaintiff moved toward a nearby table, picked up her phone behind her back, looked at the Defendants, and said, "I've got my goddamn phone, mother fucker. Right up behind my mother fucking back." (*Bruglio Badge-Camera Video*, at 37:00.) Her speech is

3

unclear and slurred, but she appeared taunt the officers when she said, "you're not going to get my phone now, are you?" She shouted obscenities at the officers. Defendant Bruglio attempted to take the phone out of Plaintiff's hands, but she lurched away quickly. Defendant Edwards approached her to take the phone out of her hands, and within seconds, both Defendant Edwards and Plaintiff fell to the ground. (*Id*. at 37:20–24.) It appeared from the video that the force of Plaintiff's movement while moving away from Bruglio, and her imbalance from intoxication, largely contributed to her fall.

At this point while on the ground, Plaintiff is temporarily not visible on Defendant Bruglio's camera footage, and Defendant Edwards' camera footage is dark (presumably, because the light was covered by his own body in the fall). Plaintiff can be heard yelling, "yeah, yeah," repeatedly while an unknown officer indicated that she was kicking her legs while on the ground.

On Defendant Edwards' camera footage, he can be seen quickly picking up the phone that had fallen, and standing up. Plaintiff then stated that Defendant Edwards broke her arm. The officers, including Defendant Edwards, helped Plaintiff stand up again while she continued

4

shouting at them. The officers told her to relax, and none raised their voices. Plaintiff's face can be seen with blood on it.

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

### A. Tennessee Constitutional Claims

Plaintiff's complaint includes claims under the Tennessee Constitution. However, Tennessee law does not allow a private right of action under the Tennessee Constitution. The Sixth Circuit has explained:

The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution. *See Lee v. Ladd*, 834 S.W.2d 323 (Tenn. Ct. App.), *appeal denied*, (Tenn. 1992). There, the Tennessee Court of Appeals, searching for authority to support or refute the plaintiff's claim of an implied cause of action for violations by a local police officer of her civil rights under the Tennessee Constitution, stated:

> We have held ... that we know of no authority for the recovery of damages for a violation of the Tennessee Constitution by a state officer. *See Bennett v. Horne*, 1989 WL 86555 (No. 89–31–II, Tenn. Ct. App. ... August 2, 1989). So far as we are able to determine, the Tennessee courts have not extended the rationale of *Bivens [v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)] to give a state cause of action against a police officer for violating a person's civil rights.

*Cline v. Rogers*, 87 F.3d 176, 179–180 (6th Cir. 1996) (quoting *Lee*, 834 S.W.2d at 325.) Accordingly, Plaintiff's claims under the Tennessee Constitution are dismissed.

### B. United States Constitutional Claims

Plaintiff's claims under the Fourth, Fifth, and Fourteenth Amendments to United States Constitution are also dismissed.

6

First, the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law. . ." The Supreme Court has held that "the Due Process Clause of the Fifth Amendment forbids the *Federal Government* to deny equal protection of the laws." *Davis v. Passman*, 442 U.S. 228, 236 (1979) (citations omitted) (emphasis added). In this case, there are no allegations involving any actions by the federal government. Accordingly, Plaintiff's Fifth Amendment claims are dismissed.

As to her Fourteenth and Fourth Amendment claims, there is no private right of action under the Constitution for violations of these amendments. Rather, lawsuits by private individuals seeking to enforce their federal constitutional rights under the Fourteenth and Fourth Amendments must invoke 42 U.S.C. § 1983. Plaintiff did not invoke § 1983 here.

However, rather than dismiss her claims outright, Plaintiff's complaint will be construed liberally as though she had invoked § 1983 because she is self-represented. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed[.]" (internal quotations omitted)); *and see Williams v. Curtis*, 631 F.3d 380, 383 (6th

7

Cir. 2011) (liberally construing pro se complaint). Even under this more liberal standard, Plaintiff's constitutional claims fail.

### 1. Fourteenth Amendment Claims

Plaintiff asserts violations of the Fourteenth Amendment. The Supreme Court has held that there are three protections guaranteed by the Due Process clause of the Fourteenth Amendment: (1) actions alleging a state official's violation of rights guaranteed in the Bill of Rights; (2) actions alleging that a government action was arbitrary or wrongful, regardless of the fairness of the process used to implement the action, and (3) actions alleging a violation of the guarantee of fair procedure. *See Zinermon v. Burch*, 494 U.S. 113 (1990).

Plaintiff does not specify which of the three recognized types of Fourteenth Amendment violations she claims here. A very liberal reading of her complaint indicates that she perhaps brings a procedural fairness claim for the officers' actions depriving her of her phone during the incident. Claims such as this require that a plaintiff show that there is not an adequate state-law remedy for her claim before she seeks a federal remedy:

> Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials.

8

> Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong. In the instant case the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies.

*Vicory v. Walton,* 721 F.2d 1062, 1065–66 (6th Cir. 1983). Plaintiff has not done so here. Accordingly, her Fourteenth Amendment claims fail. Plaintiff's Fourteenth Amendment claims are dismissed.

### 2. Fourth Amendment Claims

Plaintiff also alleges violations of her Fourth Amendment right to be free from (1) unreasonable searches and seizures, (2) false arrest, and (3) excessive force. Specifically, she cites to Defendants' "seizing Plaintiff's cell phone without a warrant and without probable cause," "arresting and imprisoning Plaintiff without probable cause and for tampering with evidence[1]," and "using unreasonable and excessive [sic]

---

[1] It is unclear whether Plaintiff is arguing that Defendants tampered with evidence, or whether she is arguing against the charges that she tampered with evidence. Either way, the Court cannot discern what she is alleging and dismisses it.

during the arrest and imprisonment of Plaintiff." (ECF No. 1 PageID.7–8.)

### a) Plaintiff's Burden

Defendants have asserted qualified immunity as a defense. Qualified immunity protects government officials "from liability where [they] reasonably misjudged the legal standard." *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (quoting *Weinmann v. McClone*, 787 F.3d 444, 340 (7th Cir. 2015)). When, as here, a government official raises the defense of qualified immunity, the plaintiff has the burden of demonstrating that the defendant is not entitled to that defense. *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). Here, Plaintiff's submission in response to Defendants' motion does not address their entitlement to qualified immunity. Accordingly, Defendants' motion is granted because Plaintiff fails to meet her burden.

Even so, Defendants did not violate Plaintiff's constitutional rights. Each claim is deficient for the reasons set forth below.

### b) Qualified Immunity Standard

Courts analyze whether officers are entitled to qualified immunity using two steps: 1) whether the defendant violated a constitutional right;

10

and 2) whether that constitutional right was clearly established at the time of the alleged violation. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020).

"For this [second] prong of the qualified immunity analysis, [courts] are not to define clearly established law at a high level of generality." *Id.* at 869, citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). However, courts must still examine "whether the contours of the plaintiff's constitutional rights were sufficiently defined to give a reasonable officer fair warning that the conduct at issue was unconstitutional." *Id.* at 869 (citing *Brown v. Chapman*, 814 F.3d 447, 461 (6th Cir. 2016)). "Fair warning" does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.*

For the reasons set forth below, the Court need not reach the "clearly established" prong, because Defendants did not violate Plaintiff's constitutional rights. Accordingly, the claims are barred by qualified immunity.

### i. Seizure of phone

First, regarding the seizure of her phone, Defendants had probable cause to seize the item. One exception to the warrant requirement is when, "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011). One recognized exigency exception is to prevent the destruction of evidence: "[W]hat is relevant here—the need "to prevent the imminent destruction of evidence" has long been recognized as a sufficient justification for a warrantless search. *Id.* (citations omitted).

Defendants were investigating a reported burglary and assault. Plaintiff was inside the victim's home, which was not her home. The video evidence demonstrates that the information she was giving officers as an explanation for her presence in the victim's home was difficult to understand and confusing, likely due to her intoxication. From what can be discerned, Plaintiff said she was invited to be in the home. She stated she had proof of her invitation on her phone. Then, while handcuffed, she grabbed the phone. Then, she became argumentative and seemed to taunt the officers that she had the evidence in her hands. Defendants Bruglio and Edwards' attempts, and success in, taking Plaintiff's phone

was reasonable under these circumstances, as it was reasonable to believe that Plaintiff, if permitted to keep her phone while handcuffed, may have destroyed or tampered with the evidence. Accordingly, probable cause existed to seize Plaintiff's phone and Defendants did not violate her constitutional rights in so doing.

### ii. Arrest

Next, Plaintiff argues that her arrest and imprisonment were unlawful. Probable cause is required to support an arrest under the Fourth Amendment. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001), *cert. denied*, 537 U.S. 819 (2002). "[F]or a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). "Probable cause exists where there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Id.*, 291 F.3d at 872. "Probable cause is assessed from the perspective of a reasonable officer on the scene rather than the 20/20 hindsight, and thus, probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of the arrest." *Klein, supra*, 275

13

F.3d at 550 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).

Defendants state in their brief that Plaintiff was arrested for "tampering with or fabricating evidence based on her actions and information known to the officers at the time." (ECF No. 23, PageID.112.) Under Tenn. Code Ann. § 39-16-503, it is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:

> (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; . . .

*Id*. Here, Defendants had probable cause to believe that Plaintiff was acting in violation of § 39-16-503.

As set forth above, given the nature of Defendants' investigation and Plaintiff's demeanor during the investigation, Defendants were investigating a reported burglary and assault. She was handcuffed at that point. But Plaintiff does not challenge the handcuffing at that stage. Rather, she challenges her arrest for tampering with and fabricating evidence. When she became argumentative and taunted the officers that she had the evidence in her hands, it was reasonable for the officers to

14

believe that she was attempting to conceal or destroy this evidence, and therefore, officers had probable cause to arrest her. Accordingly, there was no constitutional violation.

### iii. Excessive Force

Third, Plaintiff argues that Defendants used excessive force against her. The Fourth Amendment protects individuals from excessive force "in the context of an arrest or investigatory stop. . ." *Graham v. Connor*, 490 U.S. 386, 294 (1989). In cases of excessive force involving a takedown, the Court must apply an "an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

There is a three-factor test for this analysis: "[ (1) ] the severity of the crime at issue, [ (2) ] whether the suspect poses an immediate threat to the safety of the officers or others, and [ (3) ] whether he is actively resisting arrest or attempting to evade arrest by flight." *Burgess v. Fischer*, 735 F.3d 462, 472–73 (6th Cir. 2013) (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013)). Further, "[t]hese

15

factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Id.* at 473 (citing *Graham*, 490 U.S. at 396–97).

Here, the video evidence shows that Plaintiff and Defendant Edwards' fall to the ground was not a takedown and Defendant Edwards did not use excessive force against her. Rather, Defendant Edwards reached for Plaintiff after she lurched away from Defendant Bruglio and then they both fell. Defendants did not raise their voices during the encounter. Nothing in the video suggests that Defendant Edwards was acting aggressively. Indeed, in the over thirty minutes of interviewing Plaintiff and her companion, Defendants, including Edwards, remained remarkably patient even as both women were clearly intoxicated, nonsensical, belligerent, and failing to answer Defendants' questions. There is nothing in the video to indicate that when Defendant Edwards and Plaintiff fell on the floor, it constituted a takedown or other use of excessive force. Accordingly, there was no constitutional violation.

### c) Conclusion

16

In sum, qualified immunity shields Defendants Edwards and Bruglio from Plaintiff's lawsuit because there was no constitutional violation. Accordingly, summary judgment is granted in favor of Defendants, and Plaintiff's claims under the Fourth Amendment are dismissed.

### C. State-Law Claims

Plaintiff also brings state-law claims for 1) false arrest and imprisonment; and 2) assault and battery.

As to her false arrest claim, false arrest and imprisonment is defined under Tennessee law as "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). For the reasons set forth above, Plaintiff's detention was not unlawful. Accordingly, summary judgment on her false arrest and imprisonment claim is granted in favor of Defendants.

As to her assault and battery claim, the Court's conclusions on Plaintiff's Fourth Amendment claim apply to her state-law claim for assault and battery:

> The tort of assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as

17

denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson County*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997). A battery is "an intentional act that causes an unpermitted, harmful, offensive bodily conduct." *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989).

Whether sued under an assault or battery claim, an officer has the privilege to use as much force as necessary to execute an arrest or reasonable seizure. *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979). The analysis for 42 U.S.C. § 1983 claims for excessive force applies to Tennessee state-law claims for assault and battery. *Griffin v. Hardrick*, 604 F.3d 949, 956-–957 (6th Cir. 2010).

(ECF No. 23, PageID.17–18.) Accordingly, Defendants' motion for summary judgment on Plaintiff's assault and battery claim is granted.

## IV. Conclusion

In conclusion, summary judgment is GRANTED in favor of Defendants. Plaintiff's case is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated: November 13, 2020　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE
　　　　　　　　　　　　　　　SITTING BY SPECIAL
　　　　　　　　　　　　　　　DESIGNATION

18